**La Yvonne B. VALLETTA, Appellant,**

v.

**Arthur L. and Lila J. RECKSIEDLER, Respondent.**

**No. CX–84–614.**

Court of Appeals of Minnesota.

Sept. 25, 1984.

Richard Copeland, St. Paul, for appellant.

Larry Guthrie, Maun, Green, Hayes, Simon, Johanneson & Brehl, St. Paul, for respondents.

Considered and decided by POPOVICH, C.J., and FOLEY, and WOZNIAK, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

In May of 1982, the respondents (Recksiedlers) cancelled a contract for deed assigned to the appellant (Valletta). In November of 1982, Valletta commenced an action seeking reinstatement of the contract. Both Recksiedlers and Valletta moved for summary judgment. The trial court granted Recksiedlers' motion, denying reinstatement and ordering judgment for Recksiedlers for tenants' security deposits held by Valletta. Valletta claims the trial court erred in concluding: (1) that notice of cancellation of the contract for deed complied with the statutory requirements of Minn.Stat. § 559.21 (1982); and (2) that equitable relief was inappropriate. We affirm.

## FACTS

Recksiedlers are the fee owners of a 14-unit apartment building in St. Paul. In 1980, Recksiedlers sold the apartment building to Neuenfeldt on a contract for deed. Thereafter, Valletta entered into a contract for deed with Neuenfeldt under which she assumed Neuenfeldt's obligation to the Recksiedlers.

Since the assumption of the contract, four notices of cancellation on the contract have been served on Valletta, the fourth being served on April 17, 1982. The notice specified Valletta was in default in failing to make three installment payments under the contract resulting in a total delinquency of $4,050, plus attorney's fees of $175, and for failing to pay the costs of service on a prior notice of cancellation amounting to $41.05.

The notice was prepared by attorney Ronald Ylitalo and authorized Ylitalo to receive payment for the default. It listed Ylitalo's law office address as 2345 North Rice Street, St. Paul, MN 55113. After service of the notice and during the 30-day redemption period, Ylitalo moved his law office to 2472 E. Seventh Avenue, North St. Paul, MN 55109.

On May 4, 1982, Valletta called Ylitalo, inquiring as to the exact amount needed to reinstate the contract. Ylitalo informed Valletta $4,226.05 was due, and advised her that he had moved his law office, and that payment should be sent to his new address. She claims that during this telephone conversation Ylitalo gave her the incorrect office address of 2742 E. Seventh Avenue, North St. Paul, MN 55109.

That same day, Valletta mailed a cashier's check in the amount of $4,226.05 to Ylitalo at 2742 E. Seventh Ave., North St. Paul, MN, 55109. After mailing the check, Valletta left town for two weeks.

Upon her return, May 19, 1982, Valletta discovered the letter had been returned, marked "Not At This Address." She called Ylitalo on the morning of May 20, 1982, and discovered, through a secretary, that the proper address was *2472* E. Seventh Ave., not *2742*. Valletta then remailed the check (postmarked May 20 and received May 21) to the correct address. The check was made payable to Mark J. Valletta (appellant's son) and Ylitalo, but was not endorsed by Mark. The last date to reinstate the contract was May 17.

By letter dated May 25, 1982, Ylitalo returned the check to Valletta and notified her the contract was cancelled because the tender was faulty—untimely and nonnegotiable.

Valletta claims her account was carried in both her name and her son's name for certain reasons, that she had her son's power of attorney, but the credit union placed Mark's name on the check because of programming.

No reason was given for her not looking, nor seeing, Mark's name on the check, yet she insists that, but for the change of address, Ylitalo would have received the check in time; and further, "sufficient time would have been available for defendants to attempt to negotiate the check and, if dishonored, for plaintiff to rectify the error." How the above was to be accomplished is not explained.

Approximately six months later, Valletta commenced suit seeking reinstatement of the contract for deed. Both parties moved for summary judgment. The trial court granted Recksiedlers' motion for summary judgment denying reinstatement of the contract and ordering the notice of lis pendens be discharged, and ordered judgment for Recksiedlers in the amount of $1,335.77 for the tenants' security deposits held by Valletta.

Since repossessing the apartment complex in June of 1982, Recksiedlers have spent hundreds of hours repairing the premises, and thousands of dollars in repairing neglected maintenance items.

## ISSUES

1. Did the trial court err in concluding that notice of cancellation on the contract for deed complied with the statutory requirements set forth in Minn.Stat. § 559.-21?

2. Did the trial court err in not holding that vendee's good faith in attempting to cure invokes equitable relief?

3. Did the trial court err in concluding that misconduct on the part of the cancelling vendors' attorney must be "intentional" in order to invoke equitable relief?

## ANALYSIS

### STANDARD OF REVIEW

In *Grondahl v. Bulluck*, 318 N.W.2d 240 (Minn.1982), the Minnesota Supreme Court defined when summary judgment is appropriate and the standard of review on appeal.

A motion for summary judgment may be granted when the pleadings, depositions, answers to interrogatories, admissions

and affidavits show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as matter of law. * * * The district court must review the evidence in the light most favorable to the non-moving party, * * * and this court on appeal must view the evidence most favorably to the one against whom the motion was granted.

*Id.* at 242 (citations omitted).

## I.

Valletta claims the cancellation notice was defective because the notice demanded payment for costs of service of a prior notice of cancellation in the amount of $41.05, thereby violating Minn.Stat. § 559.-21 (1982). Recksiedlers contend the trial court did not have to decide this question because even if the $41.05 inclusion is determined to be a defect, it is not one which would render the cancellation notice fatally defective. We agree.

In *Karim v. Werner*, 333 N.W.2d 877 (Minn.1983), the Minnesota Supreme Court was confronted with the issue of whether a notice of cancellation misstating the amount of attorney's fees by $100 rendered the notice defective. The supreme court said:

> We decline to hold that such misstatements render cancellation notices fatally defective. Such a misstatement does not compare with a misstatement of the statutory redemption period, which is an error of a different magnitude, and renders a cancellation notice ineffective.

*Id.* at 879.

Further, in *Conley v. Downing*, 321 N.W.2d 36 (Minn.1982), a $100 overstatement of attorney's fees in a notice of cancellation did not render the notice void where there was no resulting prejudice to the vendee.

 In light of these two decisions, we hold that while the inclusion of the costs of service in a prior cancellation is indeed improper, it is not so improper as to render the notice fatally defective.

Valletta has shown no prejudice resulting from this improper inclusion. The notice of cancellation fulfilled its purpose. It alerted the vendee that cancellation was pending and that the time period for redemption was 30 days. Thus, the requisites of Minn.Stat. § 559.21 were fulfilled.

## II.

Valletta claims that because her attempt to cure was in good faith, the contract should be reinstated.

We find *Aune v. Bona*, 305 N.W.2d 602 (Minn.1981) to be controlling. The facts of *Aune*, strikingly similar to this case, also involve a contract for deed concerning an apartment building investment property. In both cases, the vendees undertook steps which they (erroneously) believed were sufficient to cure the contract defaults prior to the expiration of the cancellation "redemption" period. Both vendees relied on the mails to "cure" the contract defaults and then left town for the remainder of the cancellation cure period.

In the *Aune* case, the vendee had mailed to the vendor a check in an amount sufficient to cure the monetary defaults, together with a letter indicating that he had also paid by mail the taxes and insurance premium on the property. The vendor returned this tender by certified mail (which later came back to the vendor unclaimed), stating that the attempted cure was insufficient. The vendor requested additional proof of payment of the taxes and of the insurance.

The supreme court, holding vendee's good faith is of no consequence, said:

> If it is said he [vendee] acted in good faith, the same can be said of the vendor. Bona was not required to accept as proof of compliance the vendee's bare assurance that the checks for the taxes and insurance were in the mail. There was no conduct on the part of the vendor that misled the vendee, took undue advantage, or which could be construed as a waiver. Indeed, Bona promptly rejected the incomplete tender and explained why he was rejecting it. Aune had no one to

blame but himself for failing to cure the conditions of default.

305 N.W.2d at 604:

In the instant case, the check tendered to cure the contract was made payable to the Recksiedlers' attorney and to *a third person* (Valletta's son) and was not endorsed by said third person. As such, it was nonnegotiable. Thus, the check was an insufficient tender for two reasons: (1) it was late, (2) it was nonnegotiable.

■ Valletta did not discover that the Recksiedlers had not received her attempt to cure the contract until after the time for curing had expired. Even assuming, as the trial court did, that Recksiedlers' attorney, rather than Valletta, was to blame for the initial cure attempt not reaching the Recksiedlers, the fact that Valletta then remailed the insufficient tender, knowing that time had expired and without any explanation, puts the case in the exact same posture as *Aune*. The Recksiedlers, like the vendor in *Aune*, were not required to accept an insufficient tender.

### III.

■ Valletta claims the trial court erred in concluding that misconduct by the cancelling vendor's attorney must be intentional in order to invoke equitable relief. Valletta claims the trial court should have exercised its equitable powers because Recksiedlers' counsel committed misconduct by changing the address where Valletta was to tender payment, and providing her with an erroneous address in a subsequent telephone call. The trial court's memoranda stated: "although plaintiff may have been given the wrong address by Ylitalo, there is no allegation that she was intentionally misled." The trial court's acknowledgment of no intentional misleading merely indicated that a court is more likely to utilize its equitable powers in situations where there is intentional misleading or fraud.

Further, Valletta claims the verbal change of address constituted an amendment to the terms of the notice of cancellation and as such made the redemption period begin anew on May 4, 1982. Even if the court were to agree, this does not overcome the fact that Valletta failed to tender a negotiable check to the Recksiedlers' attorney.

■ The fact that Valletta received a wrong address is not "the problem" in this case. The problem is she used an insufficient tender; the problem is she relied on the mails; the problem is she was not around to correct the tender. Valletta's claim that she could have made a timely cure *but for* the incorrect address belies the fact that she was out of town when the time to cure was at hand.

This is not a case of fraud. If Recksiedlers' attorney had intentionally given Valletta an incorrect address with the purpose of delaying her cure beyond the statutory grace period, then indeed a court of equity could be justified in setting the cancellation aside. In such a case, the vendor's acts would constitute an attempt to restrict the statutory grace period and equity would justifiably intervene. This is not such a case.

### DECISION

The trial court did not err in finding that the cancellation notice satisfied the requisites of Minn.Stat. § 559.21. Equitable relief was not appropriate. Judgment in the sum of $1,335.77 for Recksiedlers is affirmed.

Affirmed.