Perry CONLEY, Respondent,

v.

Mary DOWNING, Appellant.

No. 81–341.

Supreme Court of Minnesota.

July 2, 1982.

Jean A. Farrand (for Legal Assistance for Older Americans), Cambridge, for appellant.

Parker, Satrom, Anderson & O'Neil and P. Hunter Anderson, Cambridge, for respondent.

AMDAHL, Chief Justice.

This is an action for specific performance. Appellant Mary Downing appeals from a judgment and decree of the Pine County District Court, Tenth Judicial District,

granting respondent Perry Conley's motion for summary judgment, and ordering specific performance, and from the court's subsequent order denying Downing's motion to vacate the judgment.

In 1972, Mary Downing, who at that time was 56 years old and recently widowed, sold 35 acres of land to Perry Conley by contract for deed for $5,500. The contract required Conley to make a $1,500 downpayment and annual payments of $1,000, beginning on March 1, 1973, with interest added on at the rate of 7% per year. Conley paid only interest for the first 3 years, and after 7 years had reduced the principal balance by only $700. The contract should have been paid in full by March 1, 1977. In June of 1979, because she was still owed principal of over $3,000 and had not received a payment since May of 1978, Mrs. Downing decided to institute cancellation proceedings. She hired an attorney, Howard Ledin, who notified Conley of Mrs. Downing's intent to cancel the contract. Conley asked Ledin to delay cancellation so that he could find a way of paying the balance; Ledin agreed to delay the proceedings until June 18, 1979.

Having received no payment from Conley by June 18, Ledin served Conley with a notice of cancellation on June 23. Ledin's notice contained two errors: the amount of attorneys fees requested was $200 instead of $100, as it should have been, and the amount owed on the contract was listed at $300 less than the amount actually due. Conley did not object to the amount demanded, and did not tender payment during the 45-day redemption period. On August 10, Ledin executed an affidavit of failure to comply with the notice. After the redemption period expired, he brought an unlawful detainer action against Conley on behalf of Mrs. Downing. In response, Conley sued Mrs. Downing in district court for specific performance of the contract. At this point Mrs. Downing hired a new attorney, John M. Sharp.

Conley moved for summary judgment in the specific performance action. Although Mrs. Downing's new attorney appeared at the hearing, he did not submit any affidavits or responsive pleadings on her behalf. At the hearing, Sharp requested and was granted time to submit a memorandum of law. He notified Mrs. Downing that he was preparing a memorandum but none was ever submitted.

In its findings of fact, conclusions of law, and order for judgment dated November 6, 1980, and filed November 13, 1980, the district court determined that the notice of cancellation served November 23, 1979, was, by reason of the demand for attorneys fees in excess of the statutory amount, "completely null and void and of no force and effect whatsoever," and granted Conley's motion for summary judgment in the specific performance action. Mrs. Downing was ordered to execute a warranty deed within 10 days of the entry of judgment. The judgment and decree provided that Conley was to deposit $3,119.10 with the clerk of court, and that if Mrs. Downing failed or refused to convey the property within 10 days, the decree would operate to pass title to Conley upon his deposit of the funds with the clerk of court. Mrs. Downing did not learn of the judgment, however, until almost 2 months later. On January 6, 1981, she contacted her present attorney, Jean Farrand, who found out from the clerk of court that a judgment and decree had been entered. Sharp told Mrs. Downing's present counsel that he was aware of the judgment and intended to appeal; however, no appeal papers were found in the court file. Mrs. Downing discharged Sharp, hired Jean Farrand, and then moved to vacate the judgment on the ground of attorney neglect. The motion was denied. Mrs. Downing appeals from both the judgment ordering specific performance and the denial of the motion to vacate.

This case raises the following issues: (1) whether a notice of cancellation of a contract for deed is void if it misstates the amount of attorneys fees; and (2) whether an attorney's failure to submit a reply brief or opposing affidavits on a motion for summary judgment, with the result that judg-

ment is entered against the client, is a proper ground for vacating the judgment under Minn.R.Civ.P. 60.02.

1. In 1976, Minn.Stat. § 559.21 (1974)[1] was amended to provide that upon default in the conditions of a contract for deed where the amount in default is greater than $750, the purchaser must pay $200 in attorneys fees. Act of Apr. 13, 1976, ch. 240, § 1, 1976 Minn. Laws 894–95. The revised act was to be effective for contracts executed after August 1, 1976. *Id.* § 2. The date of the contract for deed in this case, however, was February 23, 1972; consequently, Mrs. Downing's counsel should have demanded only $100. Mrs. Downing contends, nevertheless, that a good-faith misstatement of the amount of attorneys fees due should not automatically render the notice of cancellation void.

We have indicated that the failure to state the amount due under the contract is not fatal to a notice of cancellation because the vendee is presumed to know the terms of the contract and is not prejudiced if the amount is not stated or is stated incorrectly. *See, e.g., First National Bank, Northfield v. Coon*, 143 Minn. 262, 173 N.W. 431 (1919) (dictum); *Hage v. Benner*, 111 Minn. 365, 127 N.W. 3 (1910). In *Hjelm v. Bergman*, 275 N.W.2d 568 (Minn.1978), we distinguished that situation from one involving costs of service of the notice of cancellation; under the latter circumstances "the vendee cannot be presumed to know such amounts." *Id.* at 571.

It is clear that Conley was not prejudiced by the demand of $200 in attorneys fees. Although the attorneys fees were overstated by $100, the amount due under the contract itself was underestimated by ap-

proximately $300. Since Mrs. Downing demanded of Conley about $200 less than he actually owed—an amount that he was presumed to know—he cannot argue that he was unfairly surprised by the amount of the demand. He contends, nevertheless, that because section 559.21 provides for a procedure similar to that of strict mortgage foreclosure, a vendor must comply with its requirements in all respects. In *Needles v. Keys*, 149 Minn. 477, 184 N.W. 33 (1921), we held that a vendor could not add to the conditions that the vendee must perform according to the statute in order to protect his rights in the property. *Id.* at 480, 184 N.W. at 34. Conley argues that the misstatement of attorneys fees imposes upon the vendee an additional condition comparable to that which we found impermissible in *Needles.* In that case, however, the additional condition, which was not contained in the contract itself, was that the vendee would have to pay the entire remaining principal amount of $5,000, while here, the "condition" is the payment of attorneys fees in an incorrectly stated amount.

The purpose of the statutory cancellation procedure is to give vendees notice of an impending cancellation and a reasonable period of time to redeem their interest. *See Tarpy v. Nowicki*, 286 Minn. 257, 262, 175 N.W.2d 443, 447 (1970); *Mathwig v. Ostrand*, 132 Minn. 346, 348, 157 N.W. 589, 589 (1916). The "condition" that attorneys fees must be paid cannot be said to be a new and unexpected requirement imposed by the vendor upon the vendee, since it is a statutory requirement of which the vendee is expected to be aware. *See Albrecht v. Sell*, 260 Minn. 566, 569, 110 N.W.2d 895, 897 (1961). Conley states correctly that the

1. Minn.Stat. § 559.21 (1974) provided in part:
When default is made in the conditions of any contract for the conveyance of real estate or any interest therein, whereby the vendor has a right to terminate the same, he may do so by serving upon the purchaser, his personal representatives or assigns, either within or without the state, a notice specifying the conditions in which default has been made, and stating that such contract will terminate 30 days after the service of such notice unless prior thereto the purchaser

shall comply with such conditions and pay the costs of service, together with an amount to apply on attorneys' fees actually expended or incurred, of $50 when the amount in default is less than $500, and of $100 when the amount in default is $500 or more; provided, however, that no amount shall be required to be paid for attorneys' fees as provided hereunder, unless some part of the conditions of default shall have existed at least 45 days prior to the date of service of said notice.

statute should be construed strictly so as to avoid unnecessary forfeitures. *See, e.g., Needles v. Keys*, 149 Minn. at 480, 184 N.W. at 34. As we have pointed out, however, the purpose of the statute is to protect vendees by providing them with adequate notice of a vendor's intention to cancel the contract. *Tarpy v. Nowicki*, 286 Minn. at 262, 175 N.W.2d at 447. Here, however, it is the vendor, not the vendee, who seems to require protection. If a forfeiture were to occur in this case, it would not be because Conley received insufficient notice of the cancellation. After 7 years in possession of the property he had paid only a small portion of the principal balance. By the time she brought the cancellation action, Mrs. Downing had not received any payments in over 1 year. Because Conley was aware of his default and of the amount he owed on the contract, and because the amount demanded on the contract was less than that owed, Mrs. Downing's misstatement of the amount of attorneys fees due did not result in prejudice to Conley. Consequently, we hold that the notice of cancellation was not invalid by reason of the demand for attorneys fees in excess of the amount allowed by statute.

■ 2. Mrs. Downing also argues that the trial court should have granted her motion to vacate the judgment and decree granting Conley specific performance. Minn.R.Civ.P. 60.02 provides in part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment (other than a divorce decree), order, or proceeding and may order a new trial or grant such other relief as may be just for the following reasons: (1) Mistake, inadvertence, surprise or excusable neglect * * *.

The rule does not require that the mistake, inadvertence, surprise, or neglect be that of the party; it may be that of the party's attorney or other agent. 4 D. McFarland & W. Keppel, *Minnesota Civil Practice* § 2433, at 69–70 (1979). Mrs. Downing asserts that her attorney's neglect in failing to file an answer to the specific performance action, to submit opposing affidavits, or to submit a reply brief is excusable as to her, and that

because she acted with due diligence after discovering the attorney's neglect, the district court's denial of her motion to vacate should be reversed.

In *Finden v. Klaas*, 268 Minn. 268, 128 N.W.2d 748 (1964), a default judgment was entered against the defendant after his attorney failed to answer the complaint, respond to the note of issue, or respond to a letter notifying him of the plaintiff's intention to submit the case as a default. Although the attorney's neglect was clearly chargeable to the defendant, who did not explain his attorney's failure to act, we reversed the trial court's denial of the defendant's motion to vacate, pointing out that

> [I]t is a cardinal rule that, in keeping with the spirit of Rule 60.02, in furtherance of justice, and pursuant to a liberal policy conducive to the trial of causes on their merits, the court should relieve a defendant from the consequences of his attorney's neglect in those cases where defendant—
>
> " * * * (a) is possessed of a reasonable defense on the merits, (b) has a reasonable excuse for his failure or neglect to answer, (c) has acted with due diligence after notice of the entry of judgment, and (d) [shows] that no substantial prejudice will result to the other party."

*Id.* at 271, 128 N.W.2d at 750 (footnote omitted). *See Nielsen, Stock & Blackburn v. Financial Acceptance Corp.*, 299 Minn. 81, 216 N.W.2d 693 (1974); *Kosloski v. Jones*, 295 Minn. 177, 203 N.W.2d 401 (1973); *Taylor v. Steinke*, 295 Minn. 244, 203 N.W.2d 859 (1973); *Hinz v. Northland Milk & Ice Cream Co.*, 237 Minn. 28, 53 N.W.2d 454 (1952); D. McFarland & W. Keppel, *supra*, at 72.

■ Although this case concerns the failure properly to defend a summary judgment motion rather than a default judgment, the same test should apply in either instance. In this case, Mrs. Downing has a reasonable defense concerning the validity of the notice of cancellation. She has also raised a reasonable argument that Conley should not be entitled to specific performance because he failed to make timely payments as required by the contract and

failed to tender payment during the statutory period for redemption. Mrs. Downing's excuse for failing to answer Conley's summary judgment motion is that she relied on her attorney's representation, in a letter dated October 1, 1980, that he was filing a brief in response to the summary judgment motion. She hired another attorney a short time after discovering that nothing had been done and that judgment had been entered against her. Furthermore, no prejudice will result to Conley if the judgment is vacated because he is, and has been, in possession of the property and he will have the opportunity to present whatever case he has remaining after our determination of the effect of the claim for excess attorneys fees upon the validity of the notice of cancellation to the court at a trial on the merits. In light of our well-established approach to Rule 60.02, which favors trials on the merits whenever possible, we hold that the district court erred in denying the motion, and remand with directions to vacate the judgment and grant leave to file responsive pleadings and affidavits in the specific performance action.

Reversed and remanded.